UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re:                                                    Case No.: 12-75157-las

Norman Thilman,                                           Chapter 7

                     Debtor.

Marc A. Pergament, Chapter 7 Trustee of the
Estate of Norman Thilman,

                     Plaintiff,

              -against-                                    Adv. Pro. No.: 14-08126-las

Claudia Tracey, Norman Thilman,
Theresa Triolo, DE Capital Mortgage, LLC and
Wells Fargo Bank, N.A.,

                     Defendants.

## MEMORANDUM OPINION AND ORDER

### I.    Introduction

On April 28, 2014, plaintiff Marc A. Pergament ("plaintiff") as chapter 7 trustee of

the estate of Norman Thilman ("Debtor") filed this action against the Debtor, Claudia

Tracey ("Tracey"), Theresa Triolo ("Triolo"), Wells Fargo Bank, N.A. ("Wells Fargo"), and

DE Capital Mortgage, LLC ("DE Capital") to avoid and recover an alleged fraudulent

transfer of an interest in real property under 11 U.S.C. §§ 544 and 548.[1]  Upon avoiding a

fraudulent transfer under either § 544 or § 548, a trustee may recover the transferred

property or the value thereof from the initial transferee or from any subsequent

transferees.  11 U.S.C. § 550(a).  With respect to subsequent transferees, § 550(b) provides a

good faith defense.  Thus, a trustee may not recover from "a transferee that takes for value,

---

[1] All statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., and will hereinafter be referred to as "§ (section number)".

. . . in good faith, and without knowledge of the voidability of the transfer avoided." 11 U.S.C. § 550(b)(1).  Defendants Wells Fargo and Triolo, as subsequent transferees, have each asserted the good faith defense under § 550(b).[2]  [Adv. Dkt. Nos. 15, 16].[3]  Plaintiff intends to offer expert testimony from William Fallon, Esq. ("Fallon") concerning the good faith defense.  In that regard, and as required by Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, Fallon prepared a written report.  [Adv. Dkt. No. 50-2].

Wells Fargo moves to strike the expert report and preclude Fallon's testimony from trial ("Motion").[4]  [Adv. Dkt. Nos. 50, 54].  Within that Motion, Wells Fargo contends that the expert report expresses an impermissible legal conclusion and is precisely the type of expert opinion that Rule 702 of the Federal Rules of Evidence prohibits.  Triolo joined in the Motion.  [Adv. Dkt. No 57].  Plaintiff opposed [Adv. Dkt. No. 53], and Wells Fargo replied. [Adv. Dkt. No. 54].

The Court has carefully reviewed the moving, opposing and reply papers and considered the parties' oral argument.  At the conclusion of the hearing on the Motion, and for the reasons set forth on the record of the hearing, the Court granted the Motion to strike the expert report and preclude Fallon from providing testimony in the form of legal conclusions.  This Memorandum Opinion and Order memorializes and explains further the bases for the Court's ruling.

---

[2] According to the complaint, plaintiff alleges that Triolo is an "immediate transferee" [Adv. Dkt. No. 1 at ¶¶ 77, 101] and that DE Capital and Wells Fargo are "mediate transferees". [Adv. Dkt. No. 1 at ¶¶ 85, 93, 109, and 117].

[3] Unless otherwise stated, citations to docket entries in the adversary proceeding, Adv. Pro. No. 14-08126-las, are cited as "[Adv. Dkt. No. ____]", and docket entries in the main bankruptcy case, Case No. 12-75157-las, are cited as "[Bankr. Dkt. No. ____]".

[4] Wells Fargo initially framed its argument under Rule 701 of the Federal Rules of Evidence ("Fed. R. Evid."). Wells Fargo maintained that Plaintiff failed to designate Fallon as an expert pursuant to Fed. R. Evid. 702. [Adv. Dkt. No. 50].  Wells Fargo further argued that, even if plaintiff had properly designated Fallon as an expert, Fallon was not qualified as an expert witness under Fed. R. Evid. 702.  *Id.*  Wells Fargo subsequently filed a letter with the Court acknowledging that Fallon "is an expert qualified 'by knowledge, skill, experience, training or education' to testify" pursuant to Fed. R. Evid. 702.  [Adv. Dkt. No. 55].

II.    **Jurisdiction**

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) and the

Standing Order of Reference entered by the United States District Court for the Eastern

District of New York pursuant to 28 U.S.C. § 157(a), dated August 28, 1986, as amended by

Order dated December 5, 2012, effective *nunc pro tunc* as of June 23, 2011.  Venue lies

under 28 U.S.C. § 1409.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(H).

III.    **Background**

A. Complaint

According to the complaint, Debtor and his former spouse, Tracey, owned real

property located at 40 Vista Drive, Manorville, New York 11949 (the "Property") as joint

tenants with right of survivorship.  [Adv. Dkt. No. 1 at ¶¶ 10, 14, 15].  Plaintiff alleges that

on September 16, 2010, the Debtor transferred his interest in the Property to Tracey (the

"Transfer") by a no consideration deed (the "Deed").  [*Id*. at ¶¶ 16-18].  After the Transfer,

the Debtor and Tracey continued to reside at the property.  [*Id*. at ¶ 19].  On August 22,

2012, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy

Code.  [*Id*. at ¶ 7].  On May 29, 2013, during the pendency of the Debtor's chapter 7 case,

Tracey sold the Property to Triolo.  [*Id*. at ¶¶ 25, 26].  In order to finance the purchase of

the Property, Triolo obtained a loan from DE Capital in the original principal amount of

$207,931.00, memorialized by a note and secured by a mortgage on the Property dated May

29, 2013.  [*Id*. at ¶¶ 30, 31].  The note and mortgage were assigned by DE Capital to Wells

Fargo on or about September 4, 2013.  [*Id*. at ¶ 35].  According to plaintiff, the Transfer was

a fraudulent transfer under §§ 544(b)(1)[5] and 548(a)(1)(A) and (B), and he may recover the

---

[5] Under § 544(b), a trustee may recover a transfer that an unsecured creditor with an allowable claim could have avoided under applicable state law.  Here, the applicable state law is the New York Debtor and Creditor Law.  N.Y. DCL §§ 270-281.

property transferred or the value of such property from Tracey under § 550(a)(1), as the initial transferee, and from Triolo, DE Capital and Wells Fargo under § 550(a)(2), as subsequent transferees. [*See generally*, Adv. Dkt. No. 1].

B. <u>Expert Report of William Fallon, Esq.</u>

In order to refute the good faith defense under § 550(b) asserted by Wells Fargo and Triolo, plaintiff seeks to offer the testimony of Fallon. To that end, plaintiff filed an application to retain Fallon as an expert. [Bankr. Dkt. No. 33]. In support of his retention, Fallon submitted an affidavit (the "<u>Fallon Affidavit</u>") [Bankr. Dkt. No. 33-1]. In his affidavit, Fallon states that he has practiced law for 13 years and is "experienced in real estate transactions and title examinations." Fallon Affidavit ¶ 2. Fallon further states that he is being retained "to provide an opinion with respect to whether a purchaser has a duty to inquire as to the potential fraudulent character of a non-consideration transfer in the chain of title." *Id.* ¶ 3. Although Fallon states that his "Curriculum Vitae" is attached as Exhibit A to the affidavit, no curriculum vitae was attached. Thereafter, an expert report prepared by Fallon (the "<u>Report</u>") was submitted by plaintiff to Wells Fargo. [Adv. Dkt. No. 50-2].[6]

The four-page Report is divided into six sections. In Section I of the Report, titled "Qualifications," Fallon writes that "[m]y training and experience qualify me as an expert in real estate transactions and fraudulent conveyances, including title examination and the duty to inquire." In Section II of the Report, titled "Scope of Engagement," Fallon writes that he is being engaged "as an expert . . . , to provide an opinion on whether a good faith purchaser has a duty to inquire as to the potential fraudulent character of a non-

---

[6] Fallon's curriculum vitae is attached to the Report as Exhibit A.

consideration transfer in the chain of title to the premises being purchased and financed, and the transaction specifically under the facts in this case."

The remainder of the Report consists of the following main sections: (i) Section III titled "Documents Reviewed"; (ii) Section IV titled "Relevant Facts"; (iii) Section V titled "Analysis and Opinion"; and (iv) Section VI titled "Conclusion".  In the Analysis and Opinion section, Fallon opines that:

> Prospective buyers and lenders have a duty to inquire into the fraudulent character of a no consideration deed in the chain of title, such as the Quitclaim Deed from Tracey and Thilman to Tracey in this case, and the solvency of Thilman, as the transferor.  Here, Triolo and DE Capital knew or should have known that the Quitclaim Deed to Tracey was a transfer of title to the subject premises that was made with no consideration.  Thus, based on the facts and circumstances, Triolo and DE Capital should have investigated prior to the closing, the circumstances surrounding the No Consideration Deed, including whether it would be voidable.

[Adv. Dkt. No. 50-2].

In his Conclusion, Fallon states:

> In light of the above and my review of the aforesaid documents, my opinion is that any purchaser or lender could not have reasonably concluded that the Quitclaim Deed was an arms [sic] length transaction without further inquiry and investigation.  Based on the foregoing, Triolo cannot be deemed a good faith purchaser.[7]

*Id.*

## C.  Wells Fargo's Motion to Exclude

Wells Fargo argues that the Report should be stricken and Fallon's testimony precluded because the Report "provides solely legal conclusions and attempts to improperly usurp the fact-finder's role in this case."  [Adv. Dkt. No. 50 at 4].  Specifically, Wells Fargo argues that the Report ultimately concludes that (a) Triolo and DE Capital (i) had a "duty

---

[7] The Court assumes, for purposes of the Motion, that Fallon intended to include DE Capital and Wells Fargo in his Conclusion section and this omission was an oversight.

to inquire into the fraudulent character of a no consideration deed in the chain of title," (ii) had a "duty to inquire" as to the solvency of the Debtor as transferor, (iii) "knew or should have known" that the Transfer was made for no consideration, (iv) "should have investigated" the voidability of the Transfer, and (v) "could not have reasonably concluded" that the Transfer was an arms' length transaction absent further inquiry; and (b) "Triolo cannot be deemed a good faith purchaser." *Id.* at 4-5. Wells Fargo contends that these conclusions, drawn from the text of the Report itself, are improper legal opinions and must be excluded. Additionally, Wells Fargo argues that Fallon's testimony is conjectural and speculative because "[t]he Report fails to provide how and why Fallon reached his particular conclusions and is pure conjecture." *Id.* at 5.

Plaintiff responds that: (a) the Report was "submitted for the purpose of identifying the facts surrounding the [Transfer] that should have placed Triolo, DE Capital and Wells Fargo 'on inquiry' of a potential fraudulent conveyance and what steps or action each transferee should have taken to investigate the potential avoidability of the [Transfer]" [Adv. Dkt. No. 53 at ¶ 11]; (b) the Report was offered "to provide information with respect to the customary practice of buyers and mortgagees who observe a no consideration deed in the chain of title" including "the requirement that an inquiry be made into a no consideration deed and the level of inquiry generally required by a good faith purchaser" [*Id.* at ¶ 16]; (c) Fallon opined that the no consideration deed should have prompted Triolo, DE Capital, and Wells Fargo "to ask for some financial information to determine whether the [Transfer] violated New York's Debtor and Creditor law" [*Id.* at ¶ 17]; and (d) even if the Report embraces "the decisive legal conclusion at issue" in this action, Fed. R. Evid. 704 permits an expert to render an opinion embracing the ultimate issue to be decided by the trier of fact [*Id.* at ¶¶ 24, 25].

6

In its reply, Wells Fargo asserts that plaintiff seeks to recast the Report as testimony to establish prevailing practices in residential mortgage financing when a search reveals a no consideration deed in the chain of title.  Wells Fargo contends that plaintiff's description of the Report lies in stark contrast to the Report itself.  The Report, Wells Fargo points out, is devoid of information regarding the customary practice of residential home buyers and mortgagees.  Instead, it offers nothing more than an opinion on the "duty to inquire" when there is a no consideration deed in the chain of title.  [Adv. Dkt. No. 54 at 2-3].

## IV.  **Applicable Legal Standards**

"The trial court acts as a gatekeeper with respect to expert testimony, properly admitting only such testimony as would help the [finder of fact] understand the evidence or determine a fact at issue." *Hickey v. City of New York,* 173 F. App'x 893, 894 (2d Cir. 2006).  The court's "gatekeeping" function applies to testimony based on scientific, or on technical, or other specialized knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).  The Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 597 (1993).  The Court's task "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd.*, 526 U.S. at 152.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert opinion testimony at trial and provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or

> other specialized knowledge will help the trier of fact to
> understand the evidence or to determine a fact in issue; (b) the
> testimony is based on sufficient facts or data; (c) the testimony is
> the product of reliable principles and methods; and (d) the expert
> has reliably applied the principles and methods to the facts of the
> case.

Fed. R. Evid. 702. "[T]he proponent of expert testimony has the burden of establishing by a

preponderance of the evidence that the admissibility requirements of Rule 702 are

satisfied." *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007).

"It is well-established that 'the trial judge has broad discretion in the matter of the

admission or exclusion of expert evidence[.]' " *Boucher v. U.S. Suzuki Motor Corp.,* 73 F.3d

18, 21 (quoting *Salem v. U.S. Lines Co.,* 370 U.S. 31, 35 (1962)). In determining whether to

admit or exclude expert evidence, the court must assess: (1) whether the witness is

qualified to be an expert; (2) whether the opinion is based upon reliable data and

methodology; and (3) whether the expert's testimony will assist the trier of fact. *Nimely v.

City of New York,* 414 F.3d 381, 396-97 (2d Cir. 2005).

Important here, in deciding whether expert testimony "will assist the trier of fact,"

the use of expert testimony must "be carefully circumscribed to assure that the expert does

not usurp . . . the role of the trial judge . . . in applying the law to the facts before it."

*United States v. Bilzerian,* 926 F.2d 1285, 1294 (2d Cir. 1991). While an expert "may opine

on an issue of fact within the [trier of fact's] province," an expert "may not give testimony

stating ultimate legal conclusions based on those facts." *Id.*; *see also Hygh v. Jacobs*, 961

F.2d 359, 363 (2d Cir. 1992) ("This circuit is in accord with other circuits in requiring

exclusion of expert testimony that expresses a legal conclusion.") (citing cases). Expert

testimony will be excluded if it "provide[s] legal opinions, legal conclusions, or interpret[s]

legal terms; those roles fall solely within the province of the court." *Highland Capital*

*Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 470 (S.D.N.Y. 2005) (quoting *Roundout*

*Valley Cent. Sch. Dist. v. Coneco Corp.*, 321 F. Supp. 2d 469, 480 (N.D.N.Y. 2004)).

Relatedly, an expert may not "supplant the role of counsel in making argument at

trial, and the role of the jury [in] interpreting the evidence." *Primavera Familienstifung v.*

*Askin*, 130 F. Supp. 2d 450, 529, *abrogated on other grounds by Casey v. Merck & Co., Inc.*,

653 F.3d 95 (2d Cir. 2011); *see also LinkCo, Inc. v. Fujitsu Ltd.*, No. 00 Civ. 7242 (SAS),

2002 WL 1585551, at *2 (S.D.N.Y. July 16, 2002) (rejecting plaintiff's expert report because

the report " 'does no more than counsel for [plaintiff] will do in argument, i.e., propound a

particular interpretation of [defendant's] conduct' ") (quoting *Primavera Familienstifung*,

130 F. Supp. 2d at 530).

## V.    Discussion

Within this legal framework, the Court analyzes Fallon's proposed testimony.  The

starting point of such analysis is the Fallon Affidavit and the Scope of Engagement section

of the Report.  According to Fallon, plaintiff seeks to retain him for the purpose of providing

an opinion on whether a purchaser has a "duty to inquire as to the potential fraudulent

character of a non-consideration transfer in the chain of title."  Fallon Affidavit at ¶ 3.

Similarly, in the "Scope of Engagement" section of his Report, Fallon writes that he is

"retained as an expert by [plaintiff] to provide an opinion whether a good faith purchaser

has a duty to inquire as to the potential fraudulent character of a non-consideration

transfer . . . ."  [*See* Adv. Dkt. No. 50-2 at 2].

Fallon's self-described purpose was to reach a legal conclusion regarding the

existence of a "duty to inquire."  He did just that.  The Analysis and Opinion section and the

Conclusion set forth his view as to the ultimate legal conclusions this Court should reach.

In the Analysis and Opinion section of the Report, Fallon states that "[p]rospective buyers

and lenders have a duty to inquire into the fraudulent character of a no consideration deed

in the chain of title . . . ." [*See* Adv. Dkt. No. 50-2 at 4]. This is a legal conclusion that improperly invades the province of the Court. "The question of whether a duty exists is a matter of law to be decided by the court." *Donellan v. Ferag, Inc.,* 26 F. App'x 72, 74 (2d Cir. 2002). "When an expert undertakes to tell the [trier of fact] what result to reach, this does not aid the [trier of fact] in making a decision, but rather attempts to substitute the expert's judgment for the [trier of fact's]." *United States v. Duncan,* 42 F.3d 97, 101 (2d Cir. 1994). It is the "[c]ourt's exclusive duty and province 'to say what the law is.'" *In re Initial Pub. Offering Secs. Litig.,* 174 F. Supp. 2d 61, 69 (S.D.N.Y. 2001) (quoting *Marbury v. Madison,* 5 U.S. 137, 177 (1803)).

Fallon's additional conclusions are similarly legal in nature. He opines that Triolo and DE Capital "knew or should have known" that the Transfer was made for no consideration and that they "should have investigated" the circumstances giving rise to a no consideration deed, and that Triolo "cannot be deemed a good faith purchaser." This proffered testimony is likewise inadmissible. "One of the fundamental requirements of Rule 702 is that the proposed testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 540 (S.D.N.Y. 2004) (quoting earlier version of Fed. R. Evid 702); *accord Nimely*, 414 F.3d at 397. Fallon's proposed testimony does neither. It is conclusory and must be excluded. *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) (rejecting expert's conclusory statement where it was not accompanied by any elaboration of the expert's reasoning).

Plaintiff argues that even if the Report contains testimony that expresses a legal conclusion or a legal opinion, the Report and Fallon's proffered testimony are nevertheless

admissible under Fed. R. Evid. 704(a).[8]  Plaintiff is mistaken.  "Rule 704 was not intended to allow experts to offer opinions embodying legal conclusions." *Bausch & Lomb, Inc. v. Alcon Labs., Inc.*, 79 F. Supp. 2d 252, 255 (W.D.N.Y. 2000) (quoting *United States v. Scop*, 846 F.2d 135, 139 (2d Cir. 1988)).  Where an expert, "[r]ather than being asked to develop an expert opinion that might happen to embrace certain ultimate issues, [is] asked to reach legal conclusions regarding those ultimate issues," the expert's assignment is "flawed from the outset." *Primavera Familienstifung,* 130 F. Supp. 2d at 528.

If Fallon proffered an opinion as an expert on prevailing practices of buyers and mortgagees confronted with a no consideration deed in a chain of title, the Report may have been acceptable for that purpose.  An expert may opine on the ordinary customs and practices of an industry. *Highland Capital Mgmt.*, *L.P. v. Schnieder,* 551 F. Supp. 2d 173, 180 (S.D.N.Y. 2008); *see also Marx & Co., Inc. v. Diners' Club Inc.,* 550 F.2d 505, 509 (2d Cir. 1977).  However, despite plaintiff's argument to the contrary, the Report lacks any reference to industry customs and practices.  It simply recites Fallon's own subjective legal view of one of the central issues before the Court – whether Triolo, DE Capital and Wells Fargo had a duty to inquire.  This testimony does not assist the trier of fact.  Wells Fargo is correct that Fallon's conclusion constitutes an impermissible legal conclusion and, accordingly, it will not be received in evidence. *See Highland,* 379 F. Supp. 2d at 470; *Hygh*, 961 F. 2d at 363.[9]

---

[8] Rule 704(a) provides: "An opinion is not objectionable just because it embraces an ultimate issue."  Fed. R. Evid. 704(a).  The Advisory Committee Notes to the 2011 Amendments state that the changes were "intended to be stylistic only" with "no intent to change any result in any ruling on evidence admissibility." *See* Fed. R. Evid. 704 Advisory Committee Note to 2011 Amendments.

[9] Wells Fargo also argues that the Report falls far short of the requirements set forth in Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure and that Fallon's testimony as set forth in the Report is speculative and conjectural, and not the product of reliable principles and methods.  Because Fallon's proffered testimony merely tells the Court what result to reach and is therefore improper, the Court need not address the remaining points raised by Wells Fargo.

At the hearing, plaintiff moved to supplement the Report pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7026(e) of the Federal Rules of Bankruptcy Procedure. At the conclusion of the hearing, and for the reasons set forth on the record of the hearing and as set forth below, the Court denied plaintiff's oral motion to supplement the Report.

A proponent of an expert report has a duty to supplement or correct information in the report in a timely manner "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . ." Fed. R. Civ. P. 26(e)(1)(A). Additionally, "[f]or an expert whose report must be disclosed under Rule 26(a)(2)(B), . . . [a]ny additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due. Fed. R. Civ. P. 26(e)(2).

Rule 26(e) is not a "loophole through which a party . . . who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein, can add to them to her advantage after the court's deadline for doing so has passed." *Luke v. Family Care & Urgent Med. Clinics,* 323 F. App'x 496, 500 (9th Cir. 2009). A party's duty to supplement its initial expert report arises only when the expert learns of information previously unknown or unavailable that renders the original report inaccurate, misleading, or incomplete. *Innis Arden Golf Club v. Pitney Bowes, Inc.,* No. 3:06 CV 1352 (JBA), 2009 WL 5873112, at *3 (D. Conn. Feb. 23, 2009). Rule 26(e) is not "a vehicle to permit a party to serve a deficient opening report and then remedy the deficiency through the expedient of a 'supplemental' report." *Lidle v. Cirrus Design Corp.,* No. 08 Civ. 1253 (BSJ) (HBP), 2009 WL 4907201, at *5 (S.D.N.Y. Dec. 18, 2009).

Although plaintiff's time to supplement the Report under Fed. R. Civ. P. 26(e)(2) has not expired, he failed to present any evidence that additional or corrective information came to light that was previously unknown or unavailable to Fallon. As such, a second report cannot properly be regarded a supplementation under Rule 26(e)(1) because Fallon's "new theories" are not based on new evidence or information. Under these circumstances, a second report would supplant, rather than supplement, the Report. That is not the purpose of Rule 26(e)(1). *See Lidle*, 2009 WL 4907201, at *5.

## VI.  <u>Conclusion</u>

For the foregoing reasons, and for the reasons set forth on the record of the hearing, Fallon's testimony fails to meet the standards set by Fed. R. Evid. 702. Wells Fargo's motion to strike the Report and preclude Fallon from providing testimony in the form of legal conclusions is granted.

SO ORDERED.



**Dated: September 9, 2016**
**Central Islip, New York**

**Louis A. Scarcella**
**United States Bankruptcy Judge**